164 P.2d 386

**PETRANOVICH v. FRKOVICH et al.**

No. 4893.

Supreme Court of New Mexico.

Oct. 24, 1945.

Rehearing Denied Jan. 4, 1946.

Mechem & Hannett, of Albuquerque, for appellants.

H. A. Kiker, of Santa Fe, and Francis E. Wood, of Albuquerque, for appellee.

SADLER, Justice.

This is the second appeal in which two of the same parties aligned on opposite sides in the first appeal again oppose each other upon legal questions arising out of and incident to certain loans by one of such parties to the husband of the other. For report of former appeal, see 48 N.M. 382, 151 P.2d 337, 155 A.L.R. 295.

All of the loans have their origin in transactions which antedate filing of the present suit by more than ten years. The first one was represented by the note of the husband of Sofia Frkovich, one of the defendants, for $3,850.65, dated October 9, 1928, bearing no due date, but which it was verbally agreed the maker, Max Frkovich, should repay with interest at 5 per cent., "as soon as he could." The second loan was secured May 5, 1930, in the sum of $8,000, based solely on the verbal promise of Max Frkovich that he would repay the same "as soon as" he was able out of the earnings and income of an apartment house, garage and filling station which he borrowed the money to construct. Again on December 19, 1933, the same borrower secured a further loan of $1,600 from the plaintiff, the appellee herein, with which to purchase merchandise for use in the operation of a hotel, verbally promising to repay the same with interest at 5 per cent. per annum within such time as would enable him to realize the required amount from the sale of the merchandise purchased.

The total amount loaned the husband of defendant, Sofia Frkovich, by the plaintiff thus aggregated the sum of $13,450.65 with the making of the third or last loan.

On July 7, 1931, he paid plaintiff $1,000 to apply on the first loan, evidenced by the note. Later in the same year and on December 7, 1931, he paid plaintiff another $1,000 to apply on the loans. Then, beginning on July 1, 1936, and continuing monthly up to and including the month of February, 1940, forty-four (44) installment payments of $100 each were made to plaintiff, aggregating $4,400. These payments then ceased and no other, further or additional payments were made by or on behalf of Max Frkovich to plaintiff on account of said indebtedness.

Prior to commencement of the installment payments mentioned above but after date of the final loan of $1,600 on December 19, 1933, certain transactions between Max Frkovich and the plaintiff are recorded in the trial court's findings, as follows:

"VI. On or about July 1, 1936, no further payments having been made, plaintiff demanded of defendant Max Frkovich payment of the aforesaid loans or that he make a new contract covering the same. They then went over all their financial transactions and agreed that at that date there was owing plaintiff $12,686.60 of principal and $2,734.12 of interest, a total of $15,-420.72; but said defendant requested the plaintiff to grant an extension of the loans and indebtedness so agreed upon for a time sufficient to enable him to procure funds to pay the same by selling the garage and filling-station, part of the community real estate above described.

"VII. Thereupon, and on said date, plaintiff, and defendant Max Frkovich entered into a new verbal contract and agreement intended to cover and supersede the three existing contracts, in and by the terms of which it was mutually understood and agreed that defendant Max Frkovich would sell the garage and filling-station as soon as a purchaser could be found who would pay the fair value thereof, without sacrificing the property; and he would then pay the plaintiff the amount then agreed upon as owing the plaintiff; to-wit, the sum of $15,420.72, with interest at 5% per annum to the date of such payment; that in the meantime the garage and filling-station, being leased at a monthly rental of $100., he would pay over to plaintiff monthly that rent as received by him therefor to apply on said indebtedness; in consideration whereof the plaintiff agreed that pending such sale, or reasonable time therefor, she would accept said monthly payments and extend the loan and time of payment of the balance thereof to the time of such sale or the expiration of a reasonable time therefor.

"VIII. The defendant, Max Frkovich, commencing pursuant to said agreement on said July 1st, 1936, and in each month thereafter concluding with the month of February, 1940, continuously paid the plaintiff the sum of $100.00 in accordance with his agreement, amounting in all to the sum of $4400.00; and no other payments have been made on account of said indebtedness.

"IX. It was further the intent and understanding of the plaintiff and Max Frkovich when each of the agreements and payments herein found were made, that any and all payments to be made on account thereof should be applied first in reduction of then accrued interest, and the remainder, if any, in reduction of principal of said loans.

"X. That during the year 1940 the defendant Max Frkovich was duly adjudicated by this Court to be insane; and incompetent to manage his property and affairs; and thereafter, and before the commencement of this action, the defendant Sofia Frkovich was duly adjudicated to be the head of the community estate of herself and husband, and is still acting as such.

"XI. On or about the 27th day of March, 1941, lots containing the filling-station and the garage were duly sold and conveyed by the defendant, Sofia Frkovich, and the duly appointed guardian of the property and estate of the defendant Max Frkovich, and no part of the proceeds of such sale was paid to the plaintiff; that the defendants never received any part of the purchase price from the sale of said lots because the same were sold and the purchase price never paid over to the defendants, but on the contrary a release of a mortgage on said property for a pre-existing indebtedness created with the consent of the plaintiff; and of the proceeds of the sale of said property $5,000.00 was used to pay off said mortgage and $2,000 was expended for materials which went into the improvement of said community property.

"XII. That there is due, owing and unpaid to the plaintiff on account of said loans at this date, the sum of $16,078.26."

The plaintiff, seeking recovery on account of such transactions, instituted this action, joining as defendants "Sofia Frkovich, individually; Sofia Frkovich, as head of the community of Max and Sofia Frkovich, and Max Frkovich, an insane person by Joseph L. Smith, Guardian ad Litem." She sought judgment for the amount remaining unpaid on account of said loans, with accrued interest thereon, and the theory upon which the trial court was able to satisfy itself of a right of recovery in plaintiff, in the face of objection by defendants that the cause of action to recover each loan was barred by limitations, is so clearly shown in its conclusions of law and an opinion delivered at close of the trial that we quote them both, beginning with the Conclusions:

"That the agreement of July 1st, 1936, was a new contract made on ample consideration which superseded the earlier contracts; and the four-year Statute of Limitations had not run against its enforcement when this action was brought.

"The plaintiff is entitled to judgment for the amount found due, but only against the defendants Max Frkovich, and Sofia Frkovich as head of the community of Max and Sofia Frkovich, which judgment shall be enforceable against all the existing community property of said community."

The opinion reads: "Gentlemen, it appears to me in this case that plaintiff, in this case, this woman, loaned three separate amounts, $3,650, later $8,000, later $1,600. She had nothing in writing, it was a deal between two Slavs, they evidently have a great deal of confidence in each other. When Frkovich borrowed this $1,600, and before it was outlawed, or was barred by the Statute, she went and talked to him about it, she told him she wanted papers, and, obviously, from all the evidence in the case, he recognized these other debts that had not been paid, he knew it, and she knew it, and she was beginning to get worried, and he said, I cannot pay that amount, that's what counsel for the defendant said. How could we conceive of any man, for the sake of $1,600 suit or judgment, would acknowledge another for $8,000 and $3,850, and we get down to the fact that certainly that was a new contract he made that day. Was there a valid consideration? That's the only thing left. It was depression time, the record itself shows he had other obligations hanging over his head and he didn't want to stand suit, and he said, if you will let that $1,600.00 ride and don't make a demand for it now, I will make this new deal with you, we will total up and agree, and they did, what the total indebtedness was, and I will pay you $100.00 a month on this garage property from now on, and when I sell it, I will turn the money over to you and pay the whole debt. I say that was a new contract, and for a valid consideration and

was not barred by the Statute, and that will be the Court's finding."

Having overruled every objection of defendant made in divers and sundry ways throughout the trial that limitations barred recovery, the trial court rendered judgment against Max Frkovich, and Sofia Frkovich as head of the community of Max and Sofia Frkovich, in the sum of $16,078.26, with interest thereon from date of judgment until paid at the rate of five (5) per cent. per annum. The defendants promptly applied for and were granted an appeal from the judgment so rendered against them. While error is assigned to various rulings of the trial court, all resolve themselves into the one fundamental claim of error that the right of recovery was barred by limitations.

The theory of recovery as reflected by the amended complaint and the trial court's conclusions of law and opinion, hereinabove quoted, is to treat the arrangement entered into on July 1, 1936, as a new contract which completely superseded the three loans mentioned and to award judgment upon this so called "new contract" rather than upon the contracts creating the original indebtedness. Indeed, if this theory is to be sustained, the original indebtedness no longer existed, having been discharged and extinguished by the new contract which superseded it. Thus is invoked a careful scrutiny of the so called new contract for the purpose of determining whether it is, indeed, anything more than a new promise to pay the same debt

or debts which, if otherwise barred, would be ineffective to revive the same because not in writing and signed by the party to be charged therewith.

1941 Comp. § 27-115, tells us how causes of action founded upon contract may be revived. It reads: "Causes of action founded upon *contract* shall be revived by an *admission* that the debt is unpaid, as well as by a new *promise* to pay the same; but such admission or *new promise* must be in writing, signed by the party to be charged." (Emphasis ours.)

The first loan of $3,850.65, evidenced by a note without due date, was governed by the six-year statute of limitations, 1941 Comp. § 27-103, and became barred in October, 1934, if the statute began running on its date. See 1941 Comp. § 53-107. The four-year statute, 1941 Comp. § 27-104, was applicable to the two later loans, arranged verbally, and the very theory upon which the plaintiff seeks recovery constitutes an admission that the cause of action for recovery of each and all of said loans as an original indebtedness is barred. Indeed, the plaintiff vigorously challenges the implication that she is suing to recover for any one of the loans as an original indebtedness and asserts that she irrevocably grounds her right of recovery upon the new contract entered into on July 1, 1936. Thus again protrudes the persistent inquiry: Is that contract a *new promise* to pay the old debts? If so, it is unavailing as a basis of recovery because not in writing and signed by the party to be charged. After viewing the new arrangement from all angles, we are forced to the conclusion that it is exactly what the defendants claim for it and nothing more—a new promise to pay the old debts.

In the first place, it is to be remembered that the parties to the loans were proceeding without the advice of counsel in the matter of the July, 1936, arrangement. They were both Slav Immigrants to this country, untutored and unskilled in business or legal matters and, least of all, mindful of the fact that recovery on two of the loans already very likely was barred and the time running fast toward a barring of the third. Certainly, they must have been quite ignorant of the fact that what they were about to agree upon would at some future time have the legal incidence of saving to the one a recovery and denying to the other a defense otherwise unavailing on account of these loans. Placing the new promise in writing would easily have had that effect and could have been simply done. It would, indeed, be a strange and wholly unexpected coincidence that two ignorant Slavs should so agree in relation to the three pre-existing and past due debts that by an application of the little used doctrine of novation to what they did, the statute on revival of barred debts would become inoperative and an entirely new contract emerge freed from the conditions of the statute. Yet, stranger things have happened. It remains to be seen whether it did happen here.

It is an admitted fact, embraced in a finding of the trial court, that the amount

of new indebtedness which became the subject matter of the agreement between the parties was the exact amount unpaid of the old, with interest as specified, calculated to the date of the new promise. Now, what did the defendant promise? To do exactly what he already and originally had promised to do. We repeat finding No. VI, as follows: "On or about July 1, 1936, no further payments having been made, plaintiff demanded of defendant Max Frkovich payment of the aforesaid loans or that he make a new contract covering the same. They then went over all their financial transactions and agreed that at that date there was owing plaintiff $12,686.-60 of principal and $2,734.12 of interest, a total of $15,420.72; but said defendant requested the plaintiff to grant an extension of the loans and indebtedness so agreed upon for a time sufficient to enable him to procure funds to pay the same by selling the garage and filling-station, part of the community real estate above described."

Thus, it is obvious that the defendant simply renewed his promise to pay what he already owed, with the understanding that when he found a purchaser for the garage and filling station at a fair price, without sacrificing the property, he would pay off in full, in the meantime paying over to the plaintiff the $100 per month rental being received on the property. In so far as the new contract amounted to an extension of time to pay the $1,600 loan, not yet barred, the same was without consideration because of the existing obligation to pay. Ollman v. Huddleston, 41 N.M. 75, 64 P.2d 97; Munro v. City of Albuquerque, 48 N.M. 306, 150 P.2d 733.

That our statute, 1941 Comp. § 27-115, requiring a writing signed by the party to be charged before the "admission" or "new promise" mentioned therein will be sufficient to revive causes of action founded upon contract is to be rigorously enforced, has been many times held by this court. Bullard v. Lopez, 7 N.M. 561, 37 P. 1103, on rehearing 7 N.M. 624, 41 P. 516; Buss v. Kemp Lumber Co., 23 N.M. 567, 170 P. 54, L.R.A.1918C, 1015; Joyce-Pruit Co. v. Meadows, 27 N.M. 529, 203 P. 537; Romero v. Hopewell, 28 N.M. 259, 210 P. 231. And as held in Bullard v. Lopez, supra, and Romero v. Hopewell, supra, the statute applies with equal force to admissions or new promises made before the debt becomes barred as to those made afterwards, the Bullard case also holding that a new promise does not suspend the statute not yet run. See, also, on the effect of similar statutes in other states the cases of Hyder v. Shamy, 45 Ariz. 130, 40 P.2d 974; Price v. Price, 34 Iowa 404; Kleis v. McGrath, 127 Iowa 459, 103 N.W. 371, 69 L.R.A. 260, 109 Am. St.Rep. 396. The Iowa cases are peculiarly helpful in view of the fact that our statute of limitations, as stated in Cleland v. Hostetter, 13 N.M. 43, 48, 79 P. 801, was adopted from that state. The facts in the Iowa case of Price v. Price are so similar to those in the case at bar that it should prove decisive.

Furthermore, even if the July, 1936, promise or contract were in writing, it would be unenforcible and would itself fall within the interdiction of the statute of limitations. The trial court fixes its date as July 1, 1936. Under it, the defendant agreed to pay the old debts when he sold the filling station. Suit was not filed to recover on the contract until September 29, 1943, almost seven years after date of the agreement. The defendant's new promise was to pay when he sold the garage and filling station. The nature of this promise was such as to start the statute running on it from its date. 37 C.J. 1120, § 600; McDowell's Adm'rs v. Goodwyn's Ex'rs, 2 Mill, S.C., 441, 12 Am.Dec. 685. The author of the text in Corpus Juris citation above states: "But when a promise is to pay on the event of a contingency, the consummation of which depends wholly on the promisor, the statute begins to run from the date of the promise."

That the parties themselves did not regard the July 1, 1936, arrangement as superseding and supplanting the original debts is reflected by the fact that, so far as the evidence discloses, Sofia Frkovich who made the three loans, remained in possession of the note evidencing the only loan that was not entirely verbal.

In any view to be taken of the matter, no right of recovery has been established by the plaintiff. It follows that the judgment reviewed must be reversed and the cause remanded with a direction to the trial court to set the same aside and render judgment for the defendants. They will recover their costs.

It is so ordered.

MABRY, C. J., and BICKLEY, BRICE, and LUJAN, JJ., concur.

## On Motion for Rehearing.

SADLER, Justice.

Our opinion is challenged by motion for rehearing filed by the plaintiff (appellee). Careful consideration leaves us satisfied that the result announced is correct as based on the conclusion that the so-called superseding contract declared upon represents nothing more than a new promise to pay the old debts and is unenforceable because not in writing. Nothing new upon that controlling issue is developed by the plaintiff and it would be futile to rehear the same.

We are persuaded, however, that in going beyond the facts of the case before us and holding the new promise, even if in writing, would be unenforceable because based upon a contingency, the consummation of which rested wholly with the promissor, we may be in error. The finding was that the debtor would pay the plaintiff as soon as he could sell the garage and filling station for a fair price without sacrificing the same and that a reasonable time for making such sale would be granted. It is debatable whether the plaintiff could forestall commencement of the running of the statute by an arbitrary refusal to sell at a given price upon the ground that the same was not "fair". Good faith might be

deemed a test of the right to refuse. Cf. Atma v. Munoz, 48 N.M. 114, 146 P.2d 631.

We need not resolve this question since the promise or contract declared upon being oral, any conclusion as to its legal effect had it been in writing becomes speculative and unimportant and more appropriately might have been omitted in the first instance. Accordingly, so much of the opinion as deals with that question will be withdrawn. Otherwise it will remain as written and a rehearing of the grounds upon which it rests as well as request for oral argument thereof will be denied.

It is so ordered.

MABRY, C. J., and BICKLEY, BRICE, and LUJAN, JJ., concur.