2003-NMCA-133

80 P.3d 464

**Dennis JOSLIN, Plaintiff–Appellant,**

v.

**Michael L. GREGORY and Mary Diana Gregory, Defendants–Appellees.**

No. 22,959.

Court of Appeals of New Mexico.

Aug. 21, 2003.

Certiorari Denied, No. 28,314, Nov. 6, 2003.

Jacob D. Caldwell, Stephen Natelson, Natelson Law, Firm Taos, NM, for Appellant.

Michael L. Gregory, Las Vegas, NM, for Appellees.

## OPINION

FRY, Judge.

{1} In this case we consider whether, under NMSA 1978, § 37–1–16 (1957), Defendants Michael L. Gregory and Mary Diana Gregory made "any partial or instalment payment" that revived Plaintiff Dennis Joslin's cause of action on a promissory note so as to remove the bar of the statute of limitations. The trial court granted summary judgment in favor of Defendants, ruling that they had made no payments that revived the cause of action and that the statute of limitations therefore barred Plaintiff's claim. For the reasons that follow, we agree with the trial court that Defendants made no partial payments within the meaning of the revival statute. We therefore affirm.

## BACKGROUND

{2} The relevant facts are undisputed. On April 14, 1988, Defendants executed a note (the Gregory note) to First Federal Savings and Loan Association of Las Vegas (the Bank), agreeing to pay $73,725 with 12% interest per year. At approximately the same time, Defendants assigned to the Bank three notes payable to Defendants and secured by mortgages, the installment payments on which were to go toward paying the

Gregory note. These three notes were referred to as the Campbell note, the Gannon note, and the McKechnie note. Defendants assigned the Campbell note and the McKechnie note to the Bank on April 13, 1988, and assigned the Gannon note to the Bank on May 16, 1988. The Gregory note also provided that the Bank would "renew this loan for subsequent one year intervals on the remaining principal balance due at the rate of interest in effect at the time for loans secured by commercial real estate."

{3} On April 14, 1989, Defendants and the Bank entered into a "Modification/Extension Agreement For Installment Loans" (extension agreement). The extension agreement stated that Defendants' indebtedness on the Gregory note had been reduced, and the parties agreed to continue the terms of the original note with the interest rate remaining at 12%. The extension agreement was to mature on April 14, 1990.

{4} The Bank fell on hard times. On November 16, 1990, the Resolution Trust Corporation (RTC) took over the Bank. Subsequently, the Federal Deposit Insurance Corporation (FDIC) took over as successor-in-interest to the RTC. No modification or extension agreement to the Gregory note occurred after 1989, but payments on the three assigned notes continued to be made as before; that is, the payments on the assigned notes went to the Bank's successors-in-interest despite the absence of an extension agreement. The Campbell note was paid off and released in 1992, and the Gannon note was paid off and released in 1994. In 1995, Plaintiff purchased the Gregory note, and in early 1996, the FDIC assigned both the Gregory and McKechnie notes to Plaintiff, who continued to receive monthly installments on the McKechnie note. On October 29, 1997, the McKechnie note was paid off and released. Plaintiff contends there remains a balance owing on the Gregory note in excess of $25,000 and filed this suit on September 2, 1999, to recover against Defendants.

{5} Both parties moved for summary judgment. Defendants argued that if the Bank and its successors had complied with the Gregory note's requirement for annual renewal and adjustment of interest, the payments from the assigned notes would have satisfied Defendants' obligation to the Bank in full and there would be no principal balance due. In addition, Defendants argued that the applicable statute of limitations barred Plaintiff's claim and that the payments from the three notes could not revive Plaintiff's cause of action because they were not voluntarily made. The court granted Defendants' motion, ruling that the six-year statute of limitations had run. NMSA 1978, § 37-1-3(A) (1975). Plaintiff appeals, arguing that the payments made on the three assigned notes until the release of the McKechnie note on October 29, 1997, constituted partial payments that tolled the running of the statute of limitations, and that he therefore brought his suit within the six-year limitations period.

**STANDARD OF REVIEW**

{6} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Because the facts underlying the application of the statute of limitations and the revival statute are undisputed, we review the partial payment issue as a pure question of law. *See Tabet Lumber Co. v. Romero*, 117 N.M. 429, 432, 872 P.2d 847, 850 (1994) (stating that where the facts are undisputed, whether a particular payment is a "final payment" as defined by statute is a question of law); *Yarger v. Timberon Water & Sanitation Dist.*, 2002–NMCA–055, ¶ 7, 132 N.M. 270, 46 P.3d 1270 (stating that the legal effect of undisputed facts is a pure question of law).

**DISCUSSION**

{7} We note at the outset that Plaintiff litigated this case pursuant to the assumption that the Gregory note had matured on April 14, 1990, and that the statute of limitations had therefore begun to run on April 15, 1990. Consistent with this assumption, Plaintiff pursued his claim against Defendants on the sole ground that the payments on the three assigned notes constituted voluntary payments, each of which revived Plaintiff's cause of action under Section 37–1–16. Plaintiff

could have litigated this case under the alternative theory that no breach of Defendants' obligations under the note occurred until after the last payment on the McKechnie note in October 1997. Under this theory, the statute of limitations would not have begun to run until the time it became clear to the Bank's successors that no additional payments were forthcoming, which was less than six years prior to the filing of Plaintiff's lawsuit. Plaintiff could have argued that because Defendants personally never made any payment on the note, Defendants and the Bank had agreed and intended that the Campbell, Gannon, and McKechnie continuing note payments would satisfy Defendants' obligation on their acknowledged indebtedness to the Bank. *See Pope v. The Gap, Inc.,* 1998–NMCA–103, ¶ 13, 125 N.M. 376, 961 P.2d 1283 (explaining that controlling determination in contract is the "objective manifestations of mutual assent by the parties"). Consistent with this understanding, there would have been no need to extend the note when the extension agreement matured, and neither party would have deemed it a breach when the parties failed to enter into a further extension agreement. Under this analysis, breach—and commencement of the limitations period—did not occur until 1997.

{8} However, this is not the argument Plaintiff made below or in this appeal. We will not decide this case on a theory not explored or argued by the parties on appeal. *See In re Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (holding that the appellate court will not reach issues the parties failed to raise on appeal). Instead, we will analyze the case as presented by the parties—based on the undisputed fact that the Gregory note matured at the expiration of the extension agreement in April 1990.

{9} The parties agree that the Gregory note matured on April 14, 1990. Consequently, the entire balance of the note became due and payable on that date and, under ordinary circumstances, the statute of limitations would have begun to run. *See Inv. Co. of the Southwest v. Reese,* 117 N.M. 655, 656, 875 P.2d 1086, 1087 (1994) (stating that statute of limitations on a note begins to run when the loan goes into default). How-

ever, because the FDIC succeeded the RTC in taking over the Bank, Defendants argued below that the federal statute of limitations governed, and that the limitations period may not have begun to run until November 16, 1990, the date the RTC took over the Bank. 12 U.S.C. § 1821(d)(14)(B)(i) (stating that a claim accrues for purposes of the six-year limitations period on the later of the date the cause of action accrues or "the date of the appointment of the [FDIC] as conservator or receiver"). Assuming without deciding that the more favorable federal statute applies, the limitations period on Plaintiff's claim would have run, absent revival, in November 1996, well before Plaintiff's September 2, 1999, complaint. The question is whether Defendants did anything to revive the claim on the note and lift the limitations bar pursuant to the revival statute.

{10} Under New Mexico's revival statute:

Causes of action founded upon contract shall be revived by the making of any partial or instalment payment thereon or by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith.

§ 37-1-16. In this case Plaintiff does not claim that Defendants provided a written admission or new promise. Rather, Plaintiff contends the payments that were made on the three assigned notes, and applied toward the Gregory note, constituted partial payment under the revival statute.

{11} In analyzing Plaintiff's argument, we first turn to New Mexico case law, much of which predates the current version of the revival statute. *See, e.g., Gentry v. Gentry,* 59 N.M. 395, 285 P.2d 503 (1955); *Marine Trust Co. v. Lord,* 51 N.M. 323, 184 P.2d 114 (1947); *Cleland v. Hostetter,* 13 N.M. 43, 79 P. 801 (1905). Previous versions of the statute differ from the current version in just one respect: the earlier iterations do not contain the language explicitly recognizing that a partial payment revives the cause of action. NMSA 1953, § 23-1-16 (1939); NMSA 1941, § 27-115 (1939); NMSA 1929, § 83-111 (1897); NMSA 1915, § 3356 (1897); NMSA 1897, § 2926 (1880). Despite the dif-

ference between the current and prior versions of the statute, however, the cases analyzing previous versions of the statute shed light on the rationale underlying the concept that permits a debtor's actions to toll the statute of limitations.

{12} New Mexico law provides that the written acknowledgment or admission of a debt as provided in Section 37–1–16, revives an action under Section 37–1–3 where it is "unqualified, [but it] need not be couched in precise and direct terms." *Citizens Bank v. Teel,* 106 N.M. 290, 291, 742 P.2d 502, 503 (1987). Such an admission is sufficient to constitute acknowledgment of a debt "if it show[s] with reasonable certainty that the debt is unpaid." *Reymond v. Newcomb,* 10 N.M. 151, 175, 61 P. 205, 206 (1900); *see also Marine Trust,* 51 N.M. at 325, 184 P.2d at 115 ("It is enough if [the writing] shows the writer has treated the indebtedness as subsisting and one for which he is liable and willing to pay."). New Mexico, unlike some other jurisdictions, permits revival by way of an admission even where the debtor's acknowledgment does not constitute a new promise, for example, where the admission is accompanied by an expression of unwillingness to pay. *Joyce–Pruit Co. v. Meadows,* 27 N.M. 529, 531–32, 203 P. 537, 538 (1921); 4 Richard A. Lord, *Williston on Contracts* § 8:36 (4th ed.1992) (characterizing New Mexico's law on this point as a minority viewpoint).

{13} With respect to the new promise mentioned in Section 37–1–3, our case law reveals little other than a strict adherence to the requirement that the promise must be in writing or it cannot revive a cause of action. *Marine Trust,* 51 N.M. at 324–25, 184 P.2d at 115; *Petranovich v. Frkovich,* 49 N.M. 365, 371, 164 P.2d 386, 389 (1945).

{14} This case law establishes that, even before the enactment of today's version of the revival statute, a cause of action based on contract could be revived through certain verbal, written conduct by the debtor indicating that the debtor acknowledged the unpaid debt and/or promised to pay it. Therefore, it follows that the legislature, in enacting the present version, concluded that partial payments may indicate the same acknowledg-

ment through non-verbal conduct. The Delaware Superior Court aptly made this point in *Hart v. Deshong,* 8 A.2d 85, 87 (Del.Super.Ct.1939):

> Between the two methods of removing the bar of the Statute, viz. the direct and unconditional acknowledgment of an existing debt with its accompanying implied promise to pay on the one hand and a payment on account, on the other, there is much in common. The acknowledgment, written or oral, is an admission by word; the part payment is an admission by fact. In each case when the acknowledgment or part payment is direct and unconditional and the surrounding circumstances are such that the law implies a promise to pay, then the bar of the Statute is lifted. It has been said that part payment is the best of acknowledgments, ... [because] a man is more rash with his words than his money.

*See also* II Calvin W. Corman, *Limitation of Actions* § 9.12.3 at 93 (1991) ("A partial payment will remove the debt from the running of the statute of limitations or will renew a barred debt when such payment is made under circumstances that warrant a clear inference that the debtor acknowledges and is willing to pay a further indebtedness.").

{15} This brings us to the question at the center of this appeal: what circumstances surrounding a partial payment will give rise to an inference that the debtor acknowledges the debt and is willing to pay? There is uniform agreement that a partial payment must be voluntary in order to revive a debt. *See, e.g., Restatement (Second) of Contracts* § 82(2)(b) cmt. e (1981) (stating that "[a] voluntary transfer of money" operates to overcome the statute of limitations unless other facts suggest a different intention); Corman, *supra,* § 9.12.1 at 91 ("The part payment must be made voluntarily by the debtor or at the debtor's direction and with his or her consent."); 51 Am.Jur.2d *Limitation of Actions* § 349 (2003) ("To interrupt the running of the statute of limitations, the part payment must be the voluntary act of the debtor, or of someone acting with the debtor's consent or under his or her direction."); 54 C.J.S. *Limitations of Actions* § 265 (1987) (stating that part payment

"must be voluntary" to toll the statute of limitations).

{16} The general requirement that a partial payment must be voluntary to revive a debt gives rise to the rule that partial payments made on a debt through the sale of property, execution or other legal process, or through the application of the proceeds of a sale of property after foreclosure, are involuntary and consequently do not constitute partial payments that would restart the statute of limitations. 51 Am.Jur.2d, *supra,* § 349; *see United States v. Lorince,* 773 F.Supp. 1082, 1087, 1095 (N.D.Ill.1991) (holding that where collateral sold at auction was in the form of equipment and fixtures, the proceeds of the sale did not constitute partial payment sufficient to restart the statute of limitations); *Zaks v. Elliott,* 106 F.2d 425, 427 (4th Cir.1939) (stating that "great weight of authority" is that proceeds from sale of collateral do not renew the statute of limitations because they do not constitute a voluntary payment). One rationale underlying this rule is that, without it, creditors could unilaterally control the lifting of the statute of limitations bar by manipulating the date of auction or liquidation. *Lorince,* 773 F.Supp. at 1089–90; *Zaks,* 106 F.2d at 427. A related legal proposition, also flowing from the requirement of voluntariness, is that payments by a third party cannot toll the statute or lift the limitations bar unless the third party had the debtor's authorization or assent to make payments on the debtor's behalf. *See, e.g., Hoffman v. Sheahin,* 121 F.2d 861, 862 (D.C.Cir.1941) (emphasizing the absence of a voluntary act by the debtor in determining that the trustee acted on behalf of the creditor and not as the debtor's agent); *Smith v. Walcott,* 85 N.M. 351, 356, 512 P.2d 679, 684 (1973) (stating that an agent can revive a debt on behalf of a principal so long as the agent acts within his or her authority).

{17} With this backdrop, we conclude that under the facts in the present case, the payments from the assigned notes were not voluntary payments by Defendants and therefore cannot remove the statutory bar to Plaintiff's claim. Defendants' conduct at the time they received their initial loan was clearly voluntary. They assigned three notes that would supply a steady stream of regular payments to substitute for Defendants' personal, direct payments that would otherwise have been due. Defendants admit that the monthly payments on the assigned notes were at the time "intended to be the source of repayment of the original loan." However, once the initial assignment of the three notes was in place, the payments made to the Bank by the notes' payors could not be deemed "voluntary" payments by Defendants. It is undisputed that Defendants personally never made a single payment on the Gregory note. The notes' payors were not agents of Defendants and did not act on Defendants' behalf. Defendants' assignment of the notes relinquished all interest in and ability to control the notes. Accordingly, Defendants' consent was neither sought nor required when payments flowed from the three assigned notes to the Gregory note.

{18} We emphasize that the voluntariness of Defendants' initial assignment of the notes and their initial consent to application of the notes' payments to their own indebtedness does not shed any light on whether the payments made after the statute ran were equally voluntary. As noted by the *Restatement,* "the creditor's exercise of a power . . . irrevocably given at a previous time does not operate as a promise by the debtor." *Restatement (Second) of Contracts* § 82 cmt. e; *cf. Storrie Coal Co. v. McAlester Fuel Co.,* 109 F.2d 90, 93 (10th Cir.1940) (finding that assigned royalty payments were voluntary where applied with "current assent and direction" of debtor). Defendants' voluntary assignment of the notes' proceeds in 1988 does not reflect an intention in 1995 or 1998 to acknowledge the existence of the debt and a willingness to pay. *See* Corman, *supra,* § 9.12.3 at 93.

{19} Plaintiff focuses on the absence of a forced sale, which factually distinguishes this case from many of the cases relied on by Defendants. *See, e.g., Zaks,* 106 F.2d at 427 (involving proceeds from collateral after forced sale); *Lorince,* 773 F.Supp. at 1087, 1095 (involving collateral sold at auction); *Wolford v. Cook,* 71 Minn. 77, 73 N.W. 706, 706–07 (1898) (involving foreclosure of mortgages given as security). Plaintiff suggests

that in the absence of a forced sale, we cannot view the payments as involuntary. This argument ignores the broader reasoning behind the rule that proceeds of a forced sale do not affect the statute of limitations, namely, that only voluntary payments can trigger the revival statute because only voluntary payments represent the debtor's acknowledgment of the debt giving rise to a new promise. We cannot characterize the payments from the assigned notes as voluntary on the part of Defendants when there is no evidence that Defendants consented to or authorized the payments after the initial unconditional assignment in 1988, or that Defendants had any control over the payments. To the contrary, the evidence establishes that Defendants could not have stopped the payments even if they had wanted to because they had assigned the notes completely, retaining no legal rights. Because the evidence is undisputed, we agree with the trial court that as a matter of law Defendants made no partial payments within the meaning of the revival statute. Accordingly, we affirm the trial court. Because of this disposition, we need not address the parties' arguments regarding the applicability of Rule 12–201(C) NMRA 2003 and the proper rate of interest on the Gregory note.

## CONCLUSION

{20} For the foregoing reasons, we affirm summary judgment dismissing Plaintiff's complaint.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and JONATHAN B. SUTIN, Judge (specially concurring).

SUTIN, Judge (specially concurring).

{22} I concur, but want to add some comments. The peculiar facts of this case and the limited issue before this Court allow Defendants' argument to prevail. It is reasonable to interpret NMSA 1978, § 37–1–16 (1957), to require proof that the partial payment was voluntary. For the claim to be revived here, the partial payment must have been within Defendants' control. For if the payment is in the debtor's control, an inference can be drawn that the debtor intended

to acknowledge the existence of a still unpaid debt.

{23} In the present case, Defendants assigned the notes apparently as collateral. Yet the payments from the assigned notes appear from the outset to have been applied on the Gregory note. A payment after, and pursuant to, the assignment, and particularly after the six-year period of the statute of limitations, was not a payment over which Defendants had control. Control at the time of the partial payment is the crucial point in this case, because the crux of the question is whether Defendants acted in a manner at the time of the partial payment from which it can reasonably be inferred that they acknowledged the continued existence of an unpaid debt.

{24} It seems at first glance that the result here may be unfair to Plaintiff. If we are reading the circumstances correctly (the record is unclear), the creditor acquiesced in, accepted, and applied continued assigned note payments following the Gregory note maturity date. By continuing to accept and apply payments from the assigned notes, Plaintiff likely could no longer sue based on a default in payment at the Gregory note maturity date in April 1990, and likely could sue later based only on a default in one of the ongoing third party note installment payments. Under these circumstances, it would appear the statute of limitations should not begin to run until default in one of the ongoing installment payments. However, the date of the accrual of the cause of action based on default (which would trigger the running of the statute of limitations) is not an issue here. Plaintiff did not raise this theory below or on appeal. We decide this case based on what appears to be an assumed fact: that Plaintiff's cause of action accrued, and the statute of limitations began to run, at the maturity date of the Gregory note.