This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38114**

**THE BANK OF NEW YORK MELLON f/k/a
THE BANK OF NEW YORK as Successor
Trustee for JP MORGAN CHASE BANK,
N.A., as Trustee for the Benefit of the
CERTIFICATE HOLDERS OF EQUITY
ONE ABS, INC. MORTGAGE PASS-
THROUGH CERTIFICATES SERIES
2002-3,**

       Plaintiff-Appellee,

v.

**DENNIS HOLMES a/k/a DENNIS R. HOLMES
a/k/a DENNIS RANDALL HOLMES,**

       Defendant-Appellant,

and

**FIRST NATIONAL BANK OF OMAHA, N.A.;
COUNTRYWIDE HOME LOANS, INC. d/b/a
AMERICA'S WHOLESALE LENDER; and
LOS ALAMOS CREDIT UNION,**

       Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Murr Siler & Accomazzo, P.C.
Jamie G. Siler
James P. Eckels
Andrew P. Yarrington
Denver, CO

for Appellee

Fuentes Law Office
Robert R. Fuentes
Rio Rancho, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}**    This case arises from an in rem foreclosure action filed approximately twelve years after Dennis Holmes (Borrower) received a bankruptcy discharge. Borrower appeals from the district court's summary and default judgment and order of foreclosure sale asserting that the statutory time to foreclose expired before Bank of New York Mellon (Bank) filed its complaint in this case. We affirm.

**BACKGROUND**

**{2}**    The material facts are not in dispute. In 2002 Borrower executed a promissory note (the Note) and mortgage (Mortgage) in favor of Bank's predecessor in interest.[1] The Note was secured by real property located in Santa Fe, New Mexico. The Note provided that Borrower would make monthly payments on the first day of each month until the Note was paid off or until the obligation matured. The Note and Mortgage also contained an acceleration clause, providing that a failure to make a monthly payment constitutes a default and that the holder of the Note could then accelerate the obligation requiring immediate full payment of any remaining principal and accrued interest. On September 13, 2004, a bankruptcy court discharged Borrower's personal liability on the Note in a Chapter 7 bankruptcy proceeding. Despite the discharge, Borrower continued to make payments to Bank, the number of which is unclear.[2] No payments were made after September 2010.

**{3}**    On April 22, 2016, Bank filed an in rem complaint for foreclosure based on Borrower's failure to make payment when due under the terms of the Note.[3] In its complaint Bank stated that it exercised its acceleration option under the Note as of

---

[1]After a series of transfers the Note was indorsed and the Mortgage was assigned to Bank prior to filing of the underlying foreclosure suit.

[2]Borrower does not challenge the number of payments on appeal as a disputed issue of fact. In his briefing Borrower implies at times that he made only one payment, at other times, Borrower discusses post-discharge payments in plural but argues that the Note was never current. In the proceedings below Borrower conceded that he made multiple payments and went so far as to suggest they be returned to him. Bank asserts that payments continued until the default in 2010. The lack of specificity in the record and briefing as to the number of post discharge payments is discouraging, however it is not fatal to our analysis. As explained in this opinion, each post-discharge payment matters only to the extent that each incurred a separate limitation period until acceleration. The number of payments made prior to acceleration is inconsequential to our determination. Our concern lies with the length of time between acceleration and filing of the foreclosure suit.

[3]Bank previously filed a foreclosure suit in 2011 in *Bank of N.Y. Mellon v. Holmes*, No. D-1-101-CV-2011-01441 (Dist. Ct., June 11, 2015), which was dismissed without prejudice.

October 2010. Borrower filed a motion to dismiss pursuant to Rule 1-012(B)(6) NMRA, arguing in part that the Bank was barred by the statute of limitations from foreclosing on the mortgage. Borrower asserted that the six-year statute of limitations under NMSA 1978, Section 37-1-3 (2015) began to accrue upon Borrower's 2004 bankruptcy discharge, and had therefore expired by the time Bank filed its 2016 foreclosure complaint. The district court denied Borrower's motion to dismiss, finding in relevant part:

> There are no New Mexico cases supporting [Borrower's] arguments regarding the date of default. Voluntary payments made by [Borrower] revived the statu[te] of limitations and started a new period for the statute of limitations. This case was filed within six years of the date of default, and within the applicable statute of limitations.

Subsequently, Bank filed a motion for in rem summary and default judgment to which Borrower responded that the statute of limitations precluded the Bank's foreclosure action. By permission of the district court, both parties submitted supplemental briefing in which they addressed revival of debt after bankruptcy.

**{4}** The court held a hearing on Bank's motion for in rem summary and default judgment in February 2019, at the conclusion of which the court granted summary judgment. The district court issued a written in rem summary judgment order that included the following relevant findings:

> 2. That the [c]ourt incorporates its previous findings with regard to [Borrower's] Motion to Dismiss;
>
> 3. The [c]ourt reads NMSA [1978 Section,] 37-1-16 [1957] to be injunctive given the use of the term "or" in the first sentence of the statute, and finds that the language of the statute allows for payments to revive a statute of limitations. The [c]ourt finds that the payments made by [Borrower], more than six years after date of discharge, revived the statute of limitations, as the payment were made under a circumstances that a warrants a clear inference that [Borrower] acknowledged and was willing to pay on the Note and Mortgage after the alleged expiration of the statute of limitation;
>
> . . . .
>
> 5. [Borrower] did not support his argument regarding the statu[te] of limitations with effect on the Bankruptcy; the [c]ourt is not persuaded, and finds that the statute of limitations did not start to run on the date of [Borrower's] bankruptcy discharge;
>
> 6. [Bank] did support its arguments with cited authorities[; ]

. . . .

12.     [Borrower,] who is obligated to pay under the terms of the Note and Mortgage, has failed to make the payments due on said Note in accordance with its terms and conditions, and the Note is due for the October 1, 2010 payment and has not been brought current.

This appeal followed.

## DISCUSSION

**{5}**     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.*

**{6}**     On appeal Borrower continues to assert that Bank's foreclosure actions is barred by the six-year statute of limitations because the limitation period began to run upon his bankruptcy discharge in 2004 and the payments he made after discharge did not revive the statutory period. We agree that the limitations period applicable to actions founded upon contractual obligations contained in promissory notes (like the foreclosure action in this case) is six years. *See* § 37-1-3(A). Generally, the limitations period begins to run on the promissory note's maturity date. *See Joslin v. Gregory,* 2003-NMCA-133, ¶ 9, 134 N.M. 527, 80 P.3d 464 (observing that the statute of limitations normally begins to run for the entire balance of a promissory note on the date of maturity). However, the limitations period for promissory notes requiring installment payments begins to run only with respect to each installment when due. *See LSF9 Master Participation Tr. v. Sanchez,* 2019-NMCA-055, ¶¶ 12-13, 450 P.3d 413 (construing a note promising periodic payments as an installment contract and holding that the statute of limitations began to run with respect to each installment when due).

**{7}**     Borrower argues that the district court erred in finding that Bank's right to foreclosure was revived and in turn devotes the majority of his arguments to discussing revival under Section 37-1-16. Bank responds, and we agree, that Borrower's discharge did not trigger the accrual of time to file for foreclosure under the statute of limitations. Because we conclude that Borrower's breach in October 2010 triggered the six-year statute of limitations and that Bank filed its lawsuit within the six-year period, we hold that the district court appropriately granted summary judgment.

**{8}** Borrower does not challenge any material facts upon which the district court based its rulings;[4] therefore, we focus our analysis on the questions of law presented. In doing so, we begin with a brief discussion of the effects of a bankruptcy discharge on a secured creditor's rights under a promissory note and mortgage.

**{9}** A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (2018). While discharge relieves a borrower's personal liability for debt owed under a promissory note, it does not prohibit a secured creditor from foreclosing its mortgage on the underlying property. *See, e.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 83-84 (1991) (explaining that the bankruptcy discharge "extinguishes *only* the personal liability of the debtor"; "the [Bankruptcy] Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy"; and "[e]ven after the debtor's personal obligations have been extinguished, the mortgage holder still retains a right to payment in the form of its right to the proceeds from the sale of the debtor's property" (internal quotation marks and citation omitted)). A secured creditor's right to foreclose arises from a breach of contract and therefore "the statute of limitations begins to run from the time of the breach." *LSF9 Master Participation Tr.*, 2019-NMCA-055, ¶ 12 (internal quotation marks and citation omitted). With the foregoing in mind we now turn to the issues presented in this case.

**{10}** Before reaching Borrower's arguments regarding revival we first address Borrower's claim that his 2004 bankruptcy discharge triggered accrual of the six-year statute of limitation for foreclosure. Relying on *Altman v. Kilburn*, 1941-NMSC-023, 45 N.M. 453, 116 P.2d 812, and *Griffith v. Humble*, 1942-NMSC-006, 46 N.M. 113, 122 P.2d 134, Borrower contends that his discharge constituted a failure to make payment on the debt which caused acceleration under the terms of the note. Borrower's reliance on these cases is misplaced.

**{11}** In *Altman*, our Supreme Court considered whether the statute of limitations had run for a foreclosure action based on municipal bond obligations. 1941-NMSC-023, ¶ 1. In doing so, the Court construed the mandatory acceleration provision of the ordinance related to the bond obligations and concluded that "the entire indebtedness becomes due and payable upon default in the payment of any installment, without the necessity of an exercise of any option to so declare." *Id.* ¶ 11. Borrower argues that acceleration provisions in this case similarly mandate acceleration upon default. However, contrary to Borrower's assertion and unlike the terms of the mandatory acceleration clause in *Altman*, the terms of the acceleration clause in the Note at issue is optional. The Note specifically provides:

---

4Because Borrower does not explicitly challenge the number of payments made we do not consider the matter a disputed issue of fact.

If [Borrower is] in default, . . . the Note Holder *may* require me to pay immediately the full amount of Principal which has not been paid and all interest that [Borrower]owe[s] on that amount.

(Emphasis added.) This distinction is paramount in light of more recent case law providing that the limitation period for promissory notes requiring installment payments begins to run "only with respect to each installment when due . . . [and] would have begun to run with respect to the whole indebtedness only from the date of an exercise of the option to declare the whole indebtedness due." *LSF9 Master Participation Tr.*, 2019-NMCA-055, ¶¶ 12-13 (internal quotation marks and citation omitted). The Note in this case is just such an installment contract, as it required monthly payments in an amount less than the total amount owed over a period of thirty years. *See id.* ¶¶ 2, 4 (identifying a promissory note with similar periodic payment requirements as an installment contract).

**{12}** The facts in *Griffith* are likewise critically distinguishable. In *Griffith*, our Supreme Court considered whether the six year statute of limitations applicable to a promissory note also applied to the underlying mortgage. 1942-NMSC-006, ¶ 1. Determining that the statute of limitations on actions to collect under a promissory note also applied to foreclosure actions on the mortgage, the Court went on to recognize that where the statute of limitations applies to both the promissory note and mortgage, and the time for filing an action on note has run, the mortgage is also extinguished because "being a mere incident to the debt, [the mortgage] cannot exist independently of its principal, which is the debt." *Id.* ¶¶ 10-11, 14 (internal quotation marks and citation omitted). The Court did not however consider instances where bankruptcy extinguishes the debtor's obligation on the note. In such instances, the right to foreclose on the mortgage survives bankruptcy even though a borrower is no longer personally liable for the underlying debt. *See Johnson*, 501 U.S. at 83-84.

**{13}** Further, to the extent the Court in *Griffith* cited *Altman* to conclude that "[o]ne partial payment upon the indebtedness, absent some agreement or other controlling consideration, does not change the rule that the whole indebtedness accrues upon default of any payment under a mortgage such as this, without election on the part of the mortgage[,]" we again point out the absence of a mandatory acceleration provision in this case and that more recent case law establishes that installment contracts are treated differently. *Griffith*, 1942-NMSC-006, ¶ 12.

**{14}** Neither *Altman* nor *Griffith* stand for the proposition that a discharge in bankruptcy constitutes a default—as a matter of law—triggering the statute of limitations. As noted above, the right to foreclose survives bankruptcy. *Johnson*, 501 U.S. at 83-84. And, while discharge obviates a borrower's obligation to make payments on the discharged debt, § 524(f) permits a debtor to make voluntary payments on debts that have been discharged. This option, as Bank points out, might allow borrowers to avoid foreclosure by voluntarily making payments on the promissory note despite

having no personal obligation.[5] *See, e.g., Schueller v. Wells Fargo & Co.*, 559 Fed. Appx. 733, 738 (10th Cir. 2014) (affirming dismissal of conversion claims based on automatic withdrawals of payments after bankruptcy discharge and concluding "[a]lthough Wells Fargo was prohibited by the bankruptcy discharge from attempting to collect the home loan debt from [the plaintiff] personally, it was not prohibited from accepting voluntary payments to avoid foreclosure"). In such a situation, default reasonably occurs when a discharged borrower ceases making voluntary payments. Under an installment contract such as the Note in this case, each missed installment payment constitutes a separate default unless a creditor exercises its option to declare the whole indebtedness due. *See LSF9 Master Participation Tr.*, 2019-NMCA-055, ¶¶ 12-13. Thus, we conclude that Borrower's discharge in 2004 did not—as a matter of law—constitute a default triggering the statute of limitations for foreclosure. Instead, a separate default occurred upon each missed voluntary payment on the discharged debt and for the entire debt upon acceleration. Therefore we next determine whether the statute of limitations—beginning at the time of acceleration—expired before Bank filed its foreclosure action.

**{15}** Borrower concedes that his last voluntary post-discharge payment to Bank was in September 2010. Bank exercised its option to accelerate the debt upon Borrower's failure to voluntarily pay the next installment on October 1, 2010. Thus, the six-year statute of limitations on Bank's right to foreclose began to run on October 1, 2010. Bank filed the instant foreclosure action on April 22, 2016. The time between October 1, 2010, and April 22, 2016, is approximately five years and six months. Accordingly, because the time for filing foreclosure had not passed, we hold that Bank's right to foreclose had not expired before it filed suit in this case.

**{16}** To the extent the district court based its grant of summary judgment on a determination that voluntary payments revived Bank's cause of action we note that while incorrect, this determination does not affect our conclusion. *See Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 9, 146 N.M. 179, 207 P.3d 1156 (noting that "we are not bound by those grounds purportedly used by the district court as the basis for the granting of summary judgment" (alteration, internal quotation marks, and citation omitted)). Accordingly, we hold that the district court properly granted summary judgment.

**CONCLUSION**

**{17}** For the foregoing reasons we affirm the district court's grant of summary and default judgment and order of foreclosure sale.

**{18}** **IT IS SO ORDERED.**

---

[5]Voluntary payments under § 524(f) do not reaffirm a discharged debt as the bankruptcy code includes separate provisions for reaffirmation requiring a specific intent and declaration to reaffirm a debt. *See generally* § 524(c), (k)(1) (providing the requirements for reaffirmation agreements).

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**