**Certiorari Denied, March 2, 2015, No. 35,111**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-026**

**Filing Date:  January 6, 2015**

**Docket No. 32,510**

**LEA COUNTY STATE BANK,**

>       **Plaintiff-Appellee,**

**v.**

**MARKUM RANCH PARTNERSHIP,**
**a New Mexico General Partnership, BURRELL**
**MARKUM and ELIZABETH MARKUM,**
**husband and wife, individually and as**
**general partners to Markum Ranch and,**
**BRANDON MARKUM, individually and as**
**general partner to Markum Ranch, and**
**KATHRYN YATER f/k/a KATHRYN MARKUM,**

>       **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark T. Sanchez, District Judge**

Arland & Associates, LLC
William J. Arland III
Aletheia V.P. Allen
Albuquerque, NM

for Appellee

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Templeman & Crutchfield
James E. Templeman
Lovington, NM

**OPINION**

**GARCIA, Judge.**

**{1}**      This case involves three separate promissory notes between Lea County State Bank (the Bank) and the Markum Ranch Partnership (the Ranch) and its three partners, Burrell Markum (Burrell), Elizabeth Markum (Elizabeth), Brandon Markum (Brandon), as well as one non-partner guarantor, Kathryn Markum (Kathryn) (collectively, Appellants). Appellants appeal the district court's order granting summary judgment in favor of the Bank. Appellants no longer dispute the Bank's ability to enforce one of the promissory notes. They argue that the statute of limitations barred the Bank's claims against them regarding the remaining two promissory notes. The Bank argues that the statute of limitations for its claims against Appellants was revived when the Ranch sold its real property in 2006 and 2008 and paid the proceeds of those sales to the Bank. We conclude that the 2006 and 2008 payments revived the Bank's claims against the Ranch and its three partners, therefore; we affirm the summary judgment in that respect. We further conclude that the 2006 and 2008 payments did not automatically revive the Bank's claims against Kathryn; therefore we reverse the summary judgment against Kathryn regarding the two disputed promissory notes and remand this matter to the district court for further proceedings regarding Kathryn's personal guaranty.

## I.      BACKGROUND

**{2}**      The district court granted summary judgment in favor of the Bank. The actual basis for the district court's decision and ruling was not clearly stated. However, the facts relevant to the primary issue on appeal–the statute of limitations–are not disputed by the parties. In August 1999, Burrell, Elizabeth, and Brandon—but not Kathryn—agreed to be general partners in the Ranch. In September 1999, the Ranch signed a promissory note so that it could borrow $325,000 from the Bank. About a month later, the Ranch signed a second promissory note to borrow another $200,000 from the Bank. And in May 2000, the Ranch signed a third promissory note for a $650,000 line of credit from the Bank. We refer to these three notes individually as the $325,000 note, the $200,000 note, and the $650,000 note. These three notes were secured by a mortgage on the Ranch's real property and guaranties that were signed by Burrell, Elizabeth, Brandon, and Kathryn.

**{3}**      The Ranch defaulted on all three notes. The parties agree that the statute of limitations started to run on the Bank's claim to enforce the $200,000 note when it matured in 2004 and Appellants had not paid it off. They agree that the statute of limitations on the Bank's claim to enforce the $650,000 note started when that note matured in 2001. Appellants now concede that the Bank's claim on the $325,000 note is not barred by the statute of limitations because that note was not scheduled to mature until 2014. Therefore, they do not appeal the summary judgment ruling as it pertains to the $325,000 note.

**{4}** In October 2006, the Ranch sold part of its real property. Burrell, on behalf of the Ranch, signed a settlement statement when the sale closed. This settlement statement showed that the net proceeds of the sale—about $80,000—were to be paid to the Bank. In May 2008, the Ranch sold the rest of its real property. Burrell, Elizabeth, and Brandon signed the settlement statement on behalf of the Ranch at that sale's closing, and the net proceeds—about $382,680—were to be paid to the Bank. After both of these sales, the Bank distributed the net proceeds among all three of the debts. The Bank filed this lawsuit in 2011 to collect the remaining balance of the debts.

**{5}** The following chart summarizes the time-line for these events.

| Year | Event |
|---|---|
| 1999 | Burrell, Elizabeth, and Brandon become partners in the Ranch |
| 1999-2000 | The Ranch signs the $325,000, $200,000, and $650,000 notes, all of which are secured by a mortgage on the Ranch's real property and guaranties signed by Burrell, Elizabeth, Brandon, and Kathryn |
| 2001 | The $650,000 note matures, Appellants are in default, and the six-year statute of limitations starts to run on the Bank's right to enforce this note |
| 2004 | The $200,000 note matures, Appellants are in default, and the six-year statute of limitations starts to run on the Bank's right to enforce this note |
| 2006 | The Ranch sells some of its real property; Burrell signs the settlement statement on behalf of the Ranch showing that the net sale proceeds will be paid to the Bank and the Bank applies the proceeds to the balances on all three notes |
| 2008 | The Ranch sells the rest of its real property; Burrell, Brandon, and Elizabeth sign the settlement statement on behalf of the Ranch showing that the net sale proceeds will be paid to the Bank and the Bank applies the proceeds to the balances on all three notes |
| 2011 | The Bank files this lawsuit against the Appellants to collect the remaining balance of debts on all three notes |

3

**{6}**     Both the Bank and Appellants moved for summary judgment. Appellants contended that the statute of limitations had run on the Bank's claims. During a hearing on these motions, the district court discussed the statute of limitations issue, and it asked the parties to file supplemental briefs addressing certain issues of law in this regard that were not adequately addressed in the parties' summary judgment motions. The district court eventually entered an order granting summary judgment in favor of the Bank but did not explain the basis for its decision in that order. Thereafter, the district court signed a final judgment prepared by the Bank's counsel. The district court's judgment included detailed findings regarding factual issues that had been disputed during the summary judgment proceedings, and it contained no mention of the statute of limitations issue. Unfortunately, this ruling created complications for the parties and this Court on appeal.

**{7}**     The pertinent issues in this appeal are: (1) whether the Ranch's partial payments to the Bank from the 2006 and 2008 sales of the Ranch's real property re-started the statute of limitations on the Bank's claims against the Ranch, and (2) whether the 2006 and 2008 payments also revived the statute of limitations on the Bank's right to enforce Kathryn's guaranty.

**{8}**     Appellants also raised several alternative issues on appeal. These issues include whether oral statements allegedly made by Burrell to the Bank created a disputed factual issue as to the Bank's equitable estoppel claim, whether Appellants' admissions of certain facts in discovery constituted a written acknowledgment of the debts under the revival statute, and whether a payment made by Brandon in 2009 revived the statute of limitations as to the $650,000 note. Based upon the undisputed facts, this Court can still partially affirm the summary judgment ruling in favor of the Bank. Because the 2006 and 2008 payments from the net proceeds received from the sale of the Ranch's real property revived the statute of limitations against the Ranch and its three partners, summary judgment against the Ranch and its three partners can be affirmed. As a result, it is not necessary to address the alternative issues because they would not change the outcome on appeal.

## II.     DISCUSSION

### A.     Standard of Review

**{9}**     We review a district court's order granting summary judgment de novo. *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Joslin v. Gregory*, 2003-NMCA-133, ¶ 6, 134 N.M. 527, 80 P.3d 464 (internal quotation marks and citation omitted). Where "the facts underlying the application of the statute of limitations and the revival statute are undisputed, we review [a] partial payment issue as a pure question of law." *Id.* We review issues of statutory interpretation de novo. *Little v. Jacobs*, 2014-NMCA-105, ¶ 7, 336 P.3d 398. And "when determining the meaning of a statute, courts will often construe the language in light of the preexisting common law." *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d

4

153 ("The common law fills in gaps not addressed by a statute.").

## B.     The Final Judgment

**{10}**     In their briefs, both Appellants and the Bank discuss the content of the final judgment entered by the district court. Appellants argue that the judgment's findings contain disputed facts, along with its lack of any legal conclusions about the statute of limitations or the voluntariness of the 2006 and 2008 payments, establish that the district court improperly granted summary judgment. The Bank argues that Appellants cannot challenge the content of the final judgment on appeal after they have approved it in the district court. We note that the district court directed the Bank's counsel to "prepare the form of judgment consistent with [its summary judgment] order . . . and propose it to [Appellants'] counsel . . . for approval as to form[.]" Thus, we are not persuaded by the Bank's argument that Appellants are bound by factual findings that the Bank's counsel included in the judgment that are inconsistent with the order's conclusion that "there is no genuine issue as to any material fact[.]" We agree with Appellants that it is difficult to reconcile why the district court would enter an order granting summary judgment that makes no legal conclusions, and then enter a final judgment that contains findings about disputed factual issues and omits the core issue raised during the summary judgment proceedings—whether the statute of limitations had run on the Bank's claims. However, we need not further address the content of the summary judgment order and the final judgment because we review the district court's decision to grant summary judgment de novo, and the disputed facts that Appellants point to in the judgment are not material to our resolution of the case. *See Juneau*, 2006-NMSC-002, ¶ 8; *Scott v. Murphy Corp.*, 1968-NMSC-185, ¶ 10, 79 N.M. 697, 448 P.2d 803 (stating that the reason for a trial court's decision on a matter of law—in [that] case, a directed verdict—is immaterial because "[i]t is hornbook law that the decision of a trial court will be upheld if it is right for any reason").

## C.     Revival of the Statute of Limitations by Partial Payment

**{11}**     The applicable statute of limitations on actions involving promissory notes is six years. NMSA 1978, § 37-1-3(A) (1975). One way to revive an action on a contract and extend the statute of limitations is "by the making of any partial . . . payment" on the contract. *See* NMSA 1978, § 37-1-16 (1957). When a debt is revived, the statute of limitations starts anew. *See* § 37-1-16 (stating that "[s]uch a cause of action shall be deemed to have accrued upon the date of such partial . . . payment"); *Corona v. Corona*, 2014-NMCA-071, ¶ 12, 329 P.3d 701 (recognizing that revival causes the statute of limitations clock to "run[] anew"). Although the term "revival" suggests that the thing being revived has "expired[,]" *see Black's Law Dictionary* 1515 (10th ed. 2014), our case law and other legal authorities are clear that "revival" works to restart[1] the running of the statute of limitations

---

[1]Other similar terms for "revival" such as "renew," "restart," and "tolling" are utilized by the various authorities cited throughout this case. We have limited the use of

before, as well as after, the statute of limitations has expired. *See Davis v. Savage*, 1946-NMSC-011, ¶ 28, 50 N.M. 30, 168 P.2d 851 ("In considering the revival of causes of action upon the indebtedness by acknowledgment that the debt is unpaid, . . . it is generally regarded as immaterial whether the acknowledgment precedes or follows the bar."); *Romero v. Hopewell*, 1922-NMSC-037, ¶ 26, 28 N.M. 259, 210 P. 231 (stating that New Mexico's revival statute "applies . . . to admissions or new promises made before the debt becomes barred as [well as] to those made afterwards"); 51 Am. Jur. 2d *Limitation of Actions* § 320 (2011) ("Except in jurisdictions in which a statute requires a part[ial] payment to be made before the cause of action is barred to toll the statute of limitations, the limitation period may be started anew by a part[ial] payment made either before or after the original obligation has become barred." (footnote omitted)). However, for a partial payment to revive an action, the partial payment must be voluntary. *Joslin*, 2003-NMCA-133, ¶ 19 ("[O]nly voluntary payments can trigger the revival statute because only voluntary payments represent the debtor's acknowledgment of the debt giving rise to a new promise.").

## 1.     The Burden of Proof

{12}     Appellants argue that the Bank failed to meet its burden to make a prima facie showing that the statute of limitations was revived because it did not mention the statute of limitations or revival of actions in its initial motion for summary judgment. Appellants seem to argue that, because they raised the statute of limitations as an affirmative defense in their answer to the complaint, the Bank was required to address the defense in its motion for summary judgment, and, because it did not, the order granting summary judgment in favor of the Bank should be reversed. Although we agree with Appellants that the Bank should have addressed the statute of limitations defense in its motion for summary judgment, we recognize that the statute of limitations and revival issues were thoroughly addressed during the course of the summary judgment proceedings. Appellants raised the defense in their response to the Bank's motion, the Bank addressed the defense in its reply, the district court requested supplemental briefing on the issue, and the parties filed supplemental briefs on the issue before a ruling was entered. Under these circumstances, we conclude that the Bank met its burden to address all of the undisputed factual issues required for this Court to issue a de novo ruling on the Bank's summary judgment motion.

## 2.     Voluntariness of the Payments

{13}     The Bank submitted a sworn affidavit of its president during the summary judgment proceedings, which stated that "[Appellants] requested that [the Bank] permit [Appellants] to make the deal resulting in the 2006 [and 2008] [p]ayment[s.]" Appellants did not dispute this fact during the summary judgment proceedings. Appellants submitted the settlement statements for the 2006 and 2008 sales approved by the Ranch, showing that the net proceeds from each sale were to be paid to the Bank. Appellants did not dispute that the

_____

these similar terms as much as possible.

6

Ranch approved these settlement statements. Appellants did not dispute that the Ranch intended and directed the proceeds from 2006 and 2008 sales be paid to the Bank. Appellants did not present any evidence to create an inference that its actions regarding the payments to the Bank in 2006 and 2008 were not voluntary. Under these circumstances, we conclude that, as a matter of law, the 2006 and 2008 payments to the Bank from the proceeds of the sales of the Ranch's real property were voluntary partial payments by the Ranch.

**{14}** We are not persuaded by Appellants contention that the payments made from the 2006 and 2008 sales were involuntary because they were made through "the sale of property." In support of this argument, Appellants cite a statement made by this Court in *Joslin*:

> The general requirement that a partial payment must be voluntary to revive a debt gives rise to the rule that *partial payments made on a debt through the sale of property*, execution or other legal process, or through the application of the proceeds of a sale of property after foreclosure, *are involuntary and consequently do not constitute partial payments that would restart the statute of limitations*.

2003-NMCA-133, ¶ 16 (emphasis added).

**{15}** To the extent Appellants argue that *all* partial payments made on a debt after a debtor effectuates the sale of secured property must be recognized as involuntary, they misconstrue *Joslin*. *See id.* ¶¶ 16-17 (noting that the quoted statement was part of the "backdrop" that involved the sale of property *after foreclosure* and whether the resulting partial payments required after foreclosure must be recognized as voluntary); *see also State v. Erickson K.*, 2002-NMCA-058, ¶ 20, 132 N.M. 258, 46 P.3d 1258 ("It is well established that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Further, the authority cited in *Joslin* does not support Appellants' interpretation. *See* 2003-NMCA-133, ¶ 16 (citing 51 Am. Jur. 2d *Limitation of Actions* § 349 (2003)); *see also* 51 Am. Jur. 2d *Limitation of Actions* § 328 (2011) ("A payment made on a debt by the sale of property *on* execution or other legal process . . . does not stop the running of the statute. Similarly, a payment is not voluntary and does not restart the statute of limitations if it is made through the application of the proceeds of a sale of property after the foreclosure of a trust deed or mortgage or repossession of personal property." (emphasis added)); *United States v. Lorince*, 773 F. Supp. 1082, 1086 (N.D. Ill. 1991) (dealing with collateral that was sold at auction by the *creditor*, not the debtor); *Zaks v. Elliott*, 106 F.2d 425, 426 (4th Cir. 1939) (involving collateral that was sold by the *creditor*, not the debtor). Because Appellants do not cite any authority to support their proposition that a payment made through the *debtor's* own sale of his or her collateral is deemed to be involuntary, we presume that none exists under these circumstances. *See McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 11, 148 N.M. 16, 229 P.3d 489 (stating that where parties fail to cite authority for their legal propositions, appellate courts "will presume that no such authority exists").

**{16}** Appellants also urge us to conclude that the sale of collateral by the debtor "on his own" is just as involuntary as a forced sale or a foreclosure sale, because otherwise, "debtors would be encouraged to force the lender to go through [costly] foreclosure proceedings, . . . instead of simply selling the collateral and allowing the proceed[s] to be applied to one or more of the loans." We cannot conclude that a partial payment made through the debtor's discretionary sale of his or her own collateral is any different than a voluntary partial payment made with any other sources of funds that are available to the debtor. *See State v. Davis*, 2003-NMSC-022, ¶ 13, 134 N.M. 172, 74 P.3d 1064 (stating that appellate courts "will not construe statutes in a manner contrary to the intent of the Legislature and in a manner that leads to absurd or unreasonable results").

### 3. Identification of the Debt

**{17}** Appellants next argue that, even if the 2006 and 2008 payments were voluntary, they did not revive the Bank's claims on the $200,000 note and the $650,000 note because Appellants did not identify the particular debts that those payments were to be applied. They argue that, in order to revive the statute of limitations, a debtor making a partial payment must clearly identify the debt or debts that he or she intends to direct and apply the payment. The Bank counters that, without any specific instructions from the Appellants on how to apply the payments, it had the discretion to distribute them among all three of the notes. We agree with the Bank.

**{18}** We begin by recognizing that, at the time that Appellants made the partial payment from the 2006 sale, all three of the debts where the Bank applied the payment were enforceable. The six-year statute of limitations had not yet run on the Bank's claims involving any of the three debts. Appellants concede that the Bank's claim on the $200,000 note matured in 2004 (payment was applied two years after it matured), the claim on the $650,000 note accrued in 2001 (payment was applied five years after it matured), and that the $325,000 note would not mature until 2014.

**{19}** The general rule is that:

> A debtor owing two or more debts has the right to direct the application of his or her payment to a specific debt or debts, but in the absence of such a direction, the creditor may usually apply the payment as the creditor chooses with respect to the tolling of the statute of limitations. Thus, the creditor may apply a portion of a payment to each debt and, by such action, suspend the statute of limitations as to all[.]

54 C.J.S. *Limitations of Actions* § 383 (2010); *see also* 51 Am. Jur. 2d *Limitation of Actions* § 323 (2011) ("If a debtor fails to direct that a payment be applied to a particular debt, the creditor may make the application. If a creditor on multiple debts applies an undesignated partial payment by a debtor to a debt on which the statute of limitations has not yet run, the payment tolls the statute of limitations on that debt. If a creditor holds several distinct

8

claims, none of which is barred by the statute, and the debtor makes a payment without any direction concerning its application, the creditor may apply it to any one or distribute it among all the claims, for this purpose." (footnotes omitted)). Where neither the debtor nor the creditor directs how the debtor's payment should be applied, the common law rule also allows the payment to be apportioned among the debts in order to prevent the statute of limitations from running on any of those debts. *See* 60 Am. Jur. 2d *Payment* § 71 (2014) ("[W]ithout specific application by either the debtor or the creditor, the law will apply payments ratably to prevent any of several notes from being barred by the statute of limitations.").

**{20}**     The requirement for a debtor to identify the particular debt that a partial payment applies to will become a material factor when the statute of limitations on that particular debt has already run. *See Drake v. Tyner*, 914 P.2d 519, 523 (Colo. App. 1996) (holding that, "when a creditor on multiple debts applies an undesignated partial payment by the debtor to a debt on which the statute of limitations has not yet run, the payment tolls the statute of limitations on that debt"); *accord Neal v. Gideon*, 138 P.2d 419, 420 (Kan.1943); *Samuel v. Samuel's Adm'r*, 151 S.W. 676, 678 (Ky.  1912); *Anderson v. Nystrom*, 114 N.W. 742, 743 (Minn. 1908);  *Anderson v. Stanley*, 753 S.W.2d 98, 100 (Mo. Ct. App. 1988);  *see also* 51 Am. Jur. 2d *Limitation of Actions* 2d § 323 ("[I]f the creditor holds several separate claims, all of which are then barred by the statute, and the debtor makes a payment without directing or authorizing its application to any one of them, the bar of the statute is not removed with regard to any of the debts, because such a payment does not satisfy the requirement that the debtor recognize or acknowledge a particular debt." (footnote omitted)); 51 Am. Jur. 2d *Limitation of Actions* § 330 (2011) ("To take a debt *out of the statute of limitations* by a part payment, the evidence of the identification of the debt must be clear[.]" (emphasis added)); 28 Richard A. Lord, *Williston on Contracts* § 72:9 (4th ed. 2003) ("Where the creditor has the power to direct the application of a payment, it is allowed to make the appropriation in the way most advantageous for itself without regard to the interests of the debtor. Thus, the payment may be applied to . . . one that is unenforceable because of . . . the [s]tatute of [l]imitations. . . . [H]owever, . . . application by the creditor to a debt barred by the [s]tatute of [l]imitations will not renew the obligation unless the debtor has directed the payment or otherwise consented to the renewal of the debt.").

**{21}**     Here, the 2006 payment was made before that statute of limitations ran on any of the three debts in question. Because none of the Bank's claims were barred by the statute of limitations when the Ranch made the 2006 payment, and because the Ranch did not direct how that payment should have been applied, the Bank was free to "distribute it among all the claims," 51 Am. Jur. 2d *Limitation of Actions* § 323, and thus, "suspend the statute of limitations as to all[.]" 54 C.J.S. *Limitations of Actions* § 383. Appellants do not dispute that the Bank distributed the 2006 payment among all three debts. And they do not assert or allege any facts that would show that the Ranch intended that the 2006 payment be applied differently. Thus, the statute of limitations was revived, or started "running anew[,]" on all three debts when the 2006 payment was made, and it was revived for a second time, when the 2008 payment was made. *See Corona*, 2014-NMCA-071, ¶ 12. Therefore, no genuine

9

dispute exists regarding the material fact addressing the revival of the statute of limitations in 2006 and 2008, and, as a matter of law, the Bank's 2011 claims against the Ranch were not barred by the six-year statute of limitations. *See Joslin*, 2003-NMCA-133, ¶ 6.

**4.      Kathryn's Guaranty**

**{22}**      Appellants argue that, even if the 2006 and 2008 payments revived the Bank's claims against the Ranch, it did not automatically revive the claims against Kathryn because the Bank did not show that she consented to these payments made by the Ranch. We agree that the lack of any showing of consent on Kathryn's part precludes summary judgment against her.

**{23}**      This Court recently held that "a payment by a principal obligor, without consent or ratification by the guarantor, is not a voluntary act by the guarantor and, hence, cannot bind the guarantor." *Corona*,  2014-NMCA-071, ¶ 21. The parties do not dispute that Kathryn was a guarantor to all three notes. It is also undisputed that Kathryn was not a principal obligor because she was not a partner in the Ranch. And the Bank has made no allegations and has not asserted any facts to establish that Kathryn consented to or ratified the 2006 or 2008 sales of the Ranch's real property and the subsequent payments of the net proceeds to the Bank. Thus, the statute of limitations on the Bank's right to enforce the $650,000 and $200,000 notes against Kathryn's guaranty were not automatically revived by the 2006 and 2008 payments made by the Ranch, in its capacity as the principal obligor. Under this factual scenario, summary judgment with regard to Kathryn's continued liability for the $650,000 and $200,000 notes was improperly granted. Therefore, we reverse the summary judgment ruling entered against Kathryn regarding her continuing liability on the $650,000 and $200,000 notes, and we remand for further proceedings concerning her liability on these two notes.

**III.      CONCLUSION**

**{24}**      We affirm the summary judgment with respect to the Bank's claims against the Ranch, Burrell, Elizabeth, and Brandon. We affirm the summary judgment against Kathryn with respect to the $325,000 note. We reverse the summary judgment order with regard to Kathryn as it pertains to her personal guaranty of the $650,000 and $200,000 notes, and we remand this case to the district court for further proceedings as to Kathryn.

**{25}      IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

10

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**

11