The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: November 30, 2023

**No. A-1-CA-40077**

**LYNNE JARAMILLO,**

      Worker-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE**
**DEPARTMENT and RISK MANAGEMENT,**

      Employer/Self-Insured-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Rachel A. Bayless, Workers' Compensation Judge**

Dorato & Weems LLC
Derek Weems
Albuquerque, NM

for Appellant

Cuddy & McCarthy, LLP
Scott P. Hatcher
Santa Fe, NM

for Appellees

**OPINION**

**YOHALEM, Judge.**

{1}    Lynne Jaramillo (Worker) appeals from an order of a Workers' Compensation Judge (WCJ) awarding her 115 weeks of benefits for a scheduled injury to "one foot at the ankle," pursuant to NMSA 1978, Section 52-1-43(A)(32) (2003) of the Workers' Compensation Act (WCA), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017). This case raises a single issue of statutory construction: Worker contends that an injury to the upper part of the ankle, resulting in partial loss of use of the ankle, is an injury to Worker's "leg between knee and the ankle," compensable under Subsection[1] (A)(31) of Section 52-1-43. Worker argues that both the plain language of the WCA and longstanding precedent support her claim that the Legislature used the phrase "at the [joint]" in the list of scheduled injuries to include only injuries to the body member named *up to* the named joint, and not injuries to the joint itself. Worker seeks compensation for 130 weeks for her ankle injury, which she claims is an injury to the "leg between knee and the ankle," compensated under Subsection (A)(31), and an additional 115 weeks of compensation for what she claims is a separate injury to her foot, under Subsection (A)(32). We agree with the WCJ that an ankle injury is a scheduled injury to the "foot at the ankle," compensable under Subsection (A)(32), and that Worker's

---

[1]All references to subsections are to subsections of Section 52-1-43.

scheduled injury to her foot and ankle entitles Worker to 115 weeks of compensation. We therefore affirm.

**DISCUSSION**

**I.      The Relevant Statutory Provision**

{2}      Resolution of the question raised on appeal requires this Court to construe Section 52-1-43, the scheduled injury section of the WCA. Subsection (A) lists forty-three "specific body members," pairing each listed body member with a period of time, stated in weeks, that compensation will be provided for "the loss or loss of use" of that body member. *See* § 52-1-43(A)(1)-(43). Subsection (B) provides that the amount of compensation for the partial loss of use of a body member or physical function will be a percentage of the amount for total loss of the use or of the physical function of that body member. The number of weeks of benefits will be the same whether the loss is total or partial. *See* § 52-1-43(B).

{3}      Section 52-1-43 states, in relevant part, as follows:

> A.      For disability resulting from an accidental injury to specific body members, including the loss or loss of use thereof, the worker shall receive the weekly maximum and minimum compensation for disability as provided in Section 52-1-41 . . .  for the following periods:
>
> . . . .
>
> (31)   one leg between knee and ankle                130 weeks
>
> (32)   one foot at the ankle                                   115 weeks

. . . .

B.     For a partial loss of use of one of the body members or physical functions listed in Subsection A of this section, the worker shall receive compensation computed on the basis of the degree of such partial loss of use, payable for the number of weeks applicable to total loss or loss of use of that body member or physical function.

## II.     Standard of Review

{4}     Since the issue presented is one of statutory interpretation, our review is de novo. *See Baca v. Complete Drywall Co.*, 2002-NMCA-002, ¶ 12, 131 N.M. 413, 38 P.3d 181 (reviewing de novo on appeal the meaning and construction of the WCA). "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). Our analysis requires us to begin with the plain language of the statute, giving the words their ordinary meaning. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. "The application of the plain meaning rule does not, however, end with a formalistic and mechanistic interpretation of statutory language." *Id.* The language must be read in the context of the larger statutory or regulatory scheme "to produce a harmonious whole," while "giv[ing] effect to all the language in each of those sections." *Baca*, 2002-NMCA-002, ¶ 13.

{5} This focus on the Legislature's purpose within the statutory scheme as a whole, rather than relying on the plain language of a single subsection in isolation, is especially important in workers' compensation cases. Our Supreme Court has recognized that "the provisions of the [WCA] are imprecise," and has warned that "the plain language rule may not be the best approach to interpreting this statute." *Chavez v. Mountain States Constructors*, 1996-NMSC-070, ¶ 25, 122 N.M. 579, 929 P.2d 971. It is, therefore, especially important when construing the WCA to consider the purposes of a provision in the statutory scheme. *See id.*

**III. An Injury to "One Foot at the Ankle," Subsection (A)(32), Includes an Injury to the Ankle Joint**

**A. Neither Worker's Nor Employer's Construction of the Phrase "at the Ankle" Is Supported by the Plain Language of Subsection (A)(32)**

{6} Worker contends that because the bones which form the upper part of the ankle joint are the ends of the bones in the lower leg, an injury to the upper part of the ankle is not an injury to "one foot at the ankle," but instead an injury to "the leg between knee and the ankle." Worker claims that it is logical, given the anatomy of the ankle joint where the bones of the foot and the leg are connected, for the Legislature to divide injuries to the "foot at the ankle" from injuries to "the leg between knee and the ankle" at the "line" between the foot and leg bones. Under Worker's construction of Subsections (A)(31) and (A)(32), an injury to the lower bones of the ankle joint, below the "line" Worker designates as the joint line, would

4

be treated as a scheduled injury to "one foot at the ankle," compensated under Subsection (A)(32), while an injury to the upper bones of the ankle joint, above Worker's designated "line," would be treated as a scheduled injury to "one leg between knee and ankle," under Subsection (A)(31). Worker characterizes her argument as a "plain-language reading of the scheduled injury section."

{7}     Employer contends in response that the phrase "at the ankle," has always meant the whole joint, pointing to medical literature. Employer also claims that the plain language of Subsection (A)(32) supports its reading of the phrase "at the ankle" to include all injuries to the ankle. According to Employer, if the Legislature intended to exclude injuries to the upper part of the ankle from Subsection (A)(32), the Legislature would have used the phrase injury "to the foot *up to* the ankle" in Subsection (A)(32), rather than "to the foot at the ankle."

{8}     We are not persuaded by either party's attempt to construe Subsection (A)(32) by looking exclusively to what they each claim is the plain language of that subsection. Nor are we persuaded by the parties' competing analysis of the anatomy of the ankle joint, with citations to on-line medical sources. We conclude the phrase "[injury to] one foot at the ankle" is less than crystal clear when considered in isolation, as both parties' arguments encourage us to do. We do not agree with Employer that we should assume the Legislature would have used different language if it had intended Subsection (A)(32) to compensate only injuries to the foot up to,

5

but not including, the ankle. Although we might wish that the Legislature had used other words to clarify its intent, we are charged with construing the language chosen by the Legislature. *See Perea v. Baca*, 1980-NMSC-079, ¶ 22, 94 N.M. 624, 614 P.2d 541 ("A statute must be read and given effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration." (internal quotation marks and citation omitted)).

{9}     We also do not agree with Worker's contention that we should assume that the Legislature intended to designate the "line" between "the talus and the bones of the foot" as the dividing line between the ankle and the leg simply because, on an anatomical drawing of the ankle, it appears as an "efficient, consistent and logical demarcation." These arguments amount to little more than speculation about what may have been the reasoning of the Legislature.

{10}     Having determined that the language of Subsection (A)(32) is ambiguous, we turn next to the language of Section 52-1-43, reading this section together as a harmonious whole in order to determine the Legislature's intent in using the words "one foot at the ankle" in Subsection (A)(32). In the introduction to Subsection (A)'s list of injuries to "specific body members," the Legislature states its intent to list injuries resulting in "the loss or loss of use" of each of the specific body members listed. Subsection (B), which follows the list of forty-three specific body members,

6

describes the number of weeks listed next to each injury to a body member in Subsection (A), as "applicable to [both] total loss or loss of use of that body member or physical function," and to "a partial loss of use of one of the body members." Subsection (B) provides that the amount of the weekly compensation will be determined based on the percentage of loss of use: "[T]he worker shall receive compensation computed on the basis of the degree of such partial loss of use."

{11}     The Legislature's reliance on the percentage of loss of use or function of each listed body member to calculate the amount of benefits for that injury strongly suggests legislative intent to treat each listed body member as a functional unit. When the Legislature intends to define a functional body unit so that impairment or loss of use of that body unit can be measured, it makes no sense to treat an injury to a joint by dividing that joint into two parts at an arbitrary anatomical line. The ankle, as is true of the other joints listed in the schedule, is a unified mechanism which, allows the foot to flex and move. Worker does not explain how the percentage of loss of use of the ankle joint could be divided into two parts when, as is common, an injury to the "foot at the ankle" involves both the ankle bones originating in the foot and the ankle bones originating in the leg.

{12}     Our Supreme Court has held that "where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or

reason." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 3, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted). Separating an injury to a single ankle into two injuries—one to the foot and the other to the leg as Worker suggests—is not consistent with the obvious purpose of the scheduled injury section and would lead to an absurd result.

**B.     The Precedent Relied on by Worker Does Not Resolve the Question of Statutory Construction Before This Court**

{13}     Worker next argues that her construction of the phrase "at the ankle" has been adopted by both our Supreme Court and this Court, suggesting that this question has been resolved and that we are bound by this precedent. We do not agree. Worker relies on a series of cases construing Subsection (A)(1) and (A)(4), which address injuries to "one arm *at or near* shoulder" (dextrous or nondextrous member, respectively), and Subsection (A)(29), which addresses injuries to "one leg *at or near* hip joint." (Emphases added.) *See Hamilton v. Doty*, 1962-NMSC-068, ¶ 5, 71 N.M. 422, 379 P.2d 69 (discussing an injury to the shoulder); *Carter v. Mountain Bell*, 1986-NMCA-103, ¶ 33, 105 N.M. 17, 727 P.2d 956 (discussing an injury to the shoulder); *Nelson v. Nelson Chem. Corp.*, 1987-NMCA-024, ¶ 10, 105 N.M. 493, 734 P.2d 273 (discussing an injury to the hip joint). Based on this precedent and subsequent precedent applying these cases to injuries to the shoulder or the hip, Worker argues that the phrase "one foot *at* the ankle," in Subsection (A)(32), should be construed to exclude injuries to the ankle, just as the phrases "*at or near* shoulder"

and "*at or near* hip" have been construed in the cases Worker cites to exclude injuries to the shoulder or hip joint. (Emphases added.)

{14} The decisions relied on by Worker, however, do not turn on the Legislature's description of a hip or shoulder injury as an injury to the arm "at the shoulder" or an injury to the leg "at the hip." They turn instead on the legislative purpose of the schedule of injuries, and on the difference drawn by the Legislature in the WCA between scheduled injuries and injuries to the whole body. *See* § 52-1-42 (distinguishing scheduled injuries from injuries to the body as a whole); *see also Baca*, 2002-NMCA-002, ¶¶ 22-24 (distinguishing between a scheduled injury to a worker's knee and permanent partial disability from a shoulder injury). It is the definition of a "body member," and the distinction between an injury to a listed "body member" and an injury to the main mass of the body, that informs the decisions in *Hamilton*, *Carter*, and *Nelson*, the line of cases relied on by Worker, and determines whether the injury will be compensated as a scheduled injury or under the WCA's provisions for permanent partial disability.

{15} Compensation under the schedule in Section 52-1-43(A) is limited to injuries to "specific body members." The term "body member" is not defined by the WCA. *See* § 52-1-1.1 ("Definitions"). Under the rules of statutory construction, when a statute does not define a term, "our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction

9

inquiries." *State v. Lindsey*, 2017-NMCA-048, ¶ 14, 396 P.3d 199 (alteration, internal quotation marks, and citation omitted). Webster's Third New International Dictionary, defines the word "member", in relevant part, as "a part (as a limb) that projects from the main mass of the body." *Member, Webster's Third New Int'l Dictionary* (Unabridged ed. 2002).

{16}    In *Hamilton*, our Supreme Court held that an injury to the shoulder was not "limited to the arm, a scheduled member," but "extended to other parts of the body," and, therefore, was not intended to be included on the list of scheduled injuries, but was intended to be addressed under the WCA's provisions for permanent partial disability. 1962-NMSC-068, ¶ 6. Similarly, in *Carter*, this Court held that a shoulder injury was a nonscheduled injury to the body as a whole. 1986-NMCA-103, ¶ 33 (concluding that the statutory language "at or near the shoulder," "should be construed to include only injuries to the arm itself and not injuries to the shoulder," because shoulder injuries are whole body injuries). In *Nelson*, this Court applied the decisions in *Hamilton* and *Carter* to a hip injury. We explained that "Section 52-1-43(A) states in unequivocal language that scheduled member benefits are paid for 'disability resulting from an accidental *injury to specific members*.'" *Nelson*, 1987-NMCA-024, ¶ 10. We went on to explain that "[t]he hip is not a specific member. Therefore, an injury to the hip is an injury to the body as a whole, even if it results in pain, impairment, etc., to a member, i.e., the leg." *Id.*

{17}     Therefore, although we agree with Worker that *Hamilton*, *Carter*, and *Nelson* hold that shoulder and hip injuries are not included as scheduled injuries, we do not agree that this precedent supports reading the phrase, "at the ankle" as representing legislative intent to exclude injuries to the "foot at the ankle" from Subsection (A)(32). The Legislature's purpose in excluding the shoulder and hip joints from its list of scheduled "body members" is that they are part of the main body or trunk, and, therefore, are not "body members," i.e. limbs, or parts of limbs. The same cannot be said for the ankle, which is plainly part of a limb and not part of the main body.

{18}     Finally, we note that the Workers' Compensation Administration has not had difficulty applying the "at [a joint]" language found in many of Subsection (A)'s list of scheduled injuries. *See, e.g.*, § 52-1-43(A)(5) ("one arm at elbow"); (A)(10) ("one thumb at the proximal joint"; (A)(11) ("one thumb at the second distal joint"); (A)(14) ("one first finger at the second joint"); (A)(3) ("one arm between wrist at elbow"). Worker cites no examples (apart from injuries to the shoulder or the hip), where a WCJ or this Court has treated an injury to a joint as anything other than an injury "at" that joint. With the sole exception of the shoulder and hip injuries previously addressed, the phrase "at [a joint]" has been construed uniformly by the Workers' Compensation Administration to include all injuries to that joint. *See Baca*, 2002-NMCA-002, ¶ 4 (concluding an injury to the right knee resulting in a 20

11

percent loss of use of knee is a scheduled injury to one leg *at or above the knee* entitling worker to 150 weeks of benefits under Subsection (A)(30)); *Gomez v. Bernalillo Cnty. Clerk's Off.*, 1994-NMCA-102, ¶ 10, 118 N.M. 449, 882 P.2d 40 (concluding that an injury to an elbow, resulting in a 13 percent loss of use of one arm *at elbow*, dextrous member is a scheduled injury entitling worker to 160 weeks of benefits under Subsection (A)(2)). Thus, the longstanding construction of this phrase by the agency administering the WCA also supports the decision of the WCJ. *See Pub. Serv. Co. of N.M. v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-050, ¶ 41, 141 N.M. 520, 157 P.3d 85 (providing that "courts will give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them" (internal quotation marks and citation omitted)).

**IV.     Worker's Remaining Arguments**

{19}     We understand Worker's remaining arguments to depend upon our concluding that Worker's injury to her ankle should be classified on the schedule of injuries to body members as an injury to "one leg between knee and ankle," under Subsection (A)(31). Having rejected Worker's primary argument, we address her remaining arguments summarily. Worker argues first that the evidence was insufficient to support the WCJ's finding that there was no injury to Worker's leg above the ankle. We disagree. Even if we assume Worker is challenging the sufficiency of the evidence to show a compensable injury to the calf or thigh, apart

from the ankle injury discussed previously, Worker has not shown that the findings of the WCJ are not supported by substantial evidence in the record. We note that the WCJ found that there was no evidence in the record from a qualified health care provider identifying any injury to Worker's leg above the ankle. Worker does not direct us to any medical evidence showing an injury to Worker's leg. The absence of medical evidence is sufficient to support the WCJ's finding that Worker's sole injuries were to her foot and ankle.

{20}     Worker also argues that the WCJ erred in not awarding her compensation for two separate injuries: an injury to her foot at the heel, under Subsection (A)(32), and an injury to her leg between the ankle and the knee, under Subsection (A)(31). Such separate benefits awards would be justified only by a conclusion that, as a matter of law, Worker's injury to her heel and her injury to the bones in the upper part of her ankle are injuries to two separately listed body members under Subsections (A)(32) and (A)(31), respectively. Having rejected Worker's construction of these subsections, we do not consider this argument further.

**CONCLUSION**

{21}     For the reasons stated, we affirm the decision of the WCJ.

{22}     **IT IS SO ORDERED.**

_____

**JANE B. YOHALEM, Judge**

13

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**GERALD E. BACA, Judge**

14